OPINION
The record in this case indicates that James Marshall was convicted in 1987 of one count of rape of a person under 13. Marshall's conviction arose from events that occurred when he baby-sat for two young boys, ages three and four. According to the pre-sentence investigation, Marshall admitted anally penetrating each boy on two occasions. As a result, Marshall was sentenced to seven to 25 years in prison.
After Marshall had served about 13 years, the Ohio Department of Rehabilitation and Correction (ODRC) recommended that he be designated a sexual predator. As a result, the trial court held a hearing on the issue. Although no testimony was presented at the hearing, the court did receive written exhibits consisting of the original pre-sentence investigation, 1987 forensic evaluations, the House Bill 180 screening instrument filled out by the ODRC, a summary of Marshall's prison record at Southeastern Correctional Institution, and a February, 2000 evaluation from Forensic Psychiatry. At the time of the hearing, Marshall was still in prison.
At the end of the hearing, the trial judge said only that she had reviewed the record. Then, without analysis or discussion, the judge found that Marshall was a sexual predator. An entry was subsequently filed designating Marshall a sexual predator and ordering registration and community notification. From this order, Marshall now appeals.
Marshall's appointed counsel has filed a brief pursuant to Anders v. California (1967), 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501, indicating that he can find no meritorious issues for appellate review. However, appellate counsel did list two arguable assignments of error. The first has five subparts and challenges R.C. Chap. 2950 on constitutional grounds. The second assignment of error alleges that the trial court abused its discretion in finding Marshall a sexual predator. Marshall's appointed counsel says, however, that neither assignment of error has any merit.
On May 30, 2001, we granted Marshall 60 days to file a brief assigning errors for review. Marshall then filed a pro se supplemental brief, asserting four more assignments of error. These assignments of error deal with sufficiency and weight of the evidence, a separation of powers argument, and a claim about what procedure should be applied to sexual predator proceedings.
Anders outlines a particular format for these types of cases. Specifically, trial counsel must ask permission to withdraw and must also file a brief referring to anything in the record that might arguably support an appeal. We are then required to independently examine the record before we can grant the motion to withdraw. If our review discloses colorable claims, we appoint new counsel to help the defendant present an argument. Id. See, also, Penson v. Ohio (1988), 488 U.S. 75,109 S.Ct. 346, 102 L.Ed.2d 300.
 I
After independently reviewing the record, we reject most claims that have been presented. As we mentioned, the first assignment of error raises various constitutional challenges, including claims that R.C. Chap. 2950, as amended by H.B. 180, violates federal and state constitutional prohibitions against cruel and unusual punishment, vagueness, ex post facto laws, and double jeopardy. An additional claim is that R.C. Chap. 2950 violates equal protection guarantees. However, these constitutional challenges have all been previously rejected. See, e.g., State v. Cook (1998), 83 Ohio St.3d 404; State v. Randall (2001),141 Ohio App.3d 160, 164; and State v. Williams (2000), 88 Ohio St.3d 513,516. Accordingly, the first assignment of error has no arguable merit.
In the second assignment of error, appointed counsel cites State v. White (Nov. 5, 1999), Miami App. No. 98-CA-37, unreported, 1999 WL 1000000. In White, we held that R.C. 2950.09(B)(2) violates the doctrine of separation of powers by requiring trial courts to consider certain evidentiary factors when making findings about sexual predators. 1999 WL 1000000, at pp. 11-12. According to appointed counsel, this assignment of error lacks merit because the record does not indicate that the trial court felt only statutory factors should be reviewed.
Recently, the Ohio Supreme Court held that R.C. 2950.09(B)(2) does not violate the separation of powers doctrine. State v. Thompson (2001),92 Ohio St.3d 584, paragraph two of the syllabus. In Thompson, the court also said that trial judges have discretion to decide what weight, if any, they will assign to each guideline. Further, they may consider any other evidence they feel is relevant to determining the likelihood of recidivism. Id. at paragraph one of the syllabus. Since the Ohio Supreme Court has rejected the position we took in White, the second assignment of error is without merit.
Having considered and rejected the assignments of error raised by appointed counsel, we will now discuss the pro se assignments of error.
 II
As we mentioned, the first and second pro se assignments of error challenge the sufficiency and weight of the evidence. In both assignments of error, Marshall mentions the recent Ohio Supreme Court decision in State v. Eppinger (2001), 91 Ohio St.3d 158, which adopted a "model procedure" for sexual offender classification hearings. Id. at 166. Marshall does not specifically address the procedures outlined in Eppinger. Instead, Marshall contends that the prosecutor and trial court improperly relied on stale evidence to support the sexual predator determination. Although the State has responded to Marshall's assignments of error, the State does not even mention Eppinger. However, the State does argue that the record, including an updated psychological report, shows that Marshall is likely to commit another sexually-oriented offense in the future.
Without discounting the circumstances of Marshall's crime, the scant record in this case and cursory trial court decision do not comply with the requirements that the Ohio Supreme Court established in Eppinger. Normally, we would appoint counsel to address this issue, but we see nothing that new counsel could add. Since the trial court clearly failed to comply with Eppinger, we will simply reverse the sexual predator determination and remand for further proceedings.
As we just mentioned, Eppinger set forth a "model procedure" for sexual offender classification hearings. According to the Ohio Supreme Court, a model hearing has these three objectives:.
 First, it is critical that a record be created for review. Therefore, the prosecutor and defense counsel should identify on the record those portions of the trial transcript, victim impact statements, presentence report, and other pertinent aspects of the defendant's criminal and social history that both relate to the factors set forth in R.C. 2950.09(B)(2) and are probative of the issue of whether the offender is likely to engage in the future in one or more sexually oriented offenses. If the conviction is old, as in this case, the state may need to introduce a portion of the actual trial record; if the case was recently tried, the same trial court may not need to actually review the record. In either case, a clear and accurate record of what evidence or testimony was considered should be preserved, including any exhibits, for purposes of any potential appeal.
 Second, an expert may be required, as discussed above, to assist the trial court in determining whether the offender is likely to engage in the future in one or more sexually oriented offenses. Therefore, either side should be allowed to present expert opinion by testimony or written report to assist the trial court in its determination, especially when there is little information available beyond the conviction itself. While providing an expert at state expense is within the discretion of the trial court, the lack of other criteria to assist in predicting the future behavior of the offender weighs heavily in favor of granting such a request.
 Finally, the trial court should consider the statutory factors listed in R.C. 2950.09(B)(2), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism.
91 Ohio St.3d at 166.
Eppinger was decided in March, 2001. Shortly thereafter, the Ohio Supreme Court stressed in Thompson that " `the trial court should consider the statutory factors listed in R.C. 2950.09(B)(2) and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism.' " 92 Ohio St.3d at 588 (emphasis in original).
Based on these remarks, we believe that the Ohio Supreme Court has taken an emphatic position about how sexual predator hearings should be conducted. Further, other District Courts of Appeals are following the Ohio Supreme Court's lead. For example, the Eighth District Court of Appeals recently held that a trial court's pronunciation of its decision on a defendant's sexual predator classification "without any discussion constitutes reversible error." State v. Lee (Sept. 13, 2001), Cuyahoga App. No. 78899, unreported, 2001 WL 1110299, p. 6 (emphasis in original). Likewise, the First District Court of Appeals recently found that a trial judge's "abbreviated explanation" for a sexual predator classification did not satisfy Eppinger's mandate. State v. Millow (June 15, 2001), Hamilton App. Nos. C-000524 and C-000510, unreported, 2001 WL 693918, p. 4. Accordingly, the First District reversed the sexual predator adjudication and remanded the case for a new hearing. Id.
We agree that a proper record is needed for adequate review. In fact, the present case illustrates well the problems caused by a deficient record. Without discounting the unsavory nature of Marshall's crimes, the trial court decision still gives us nothing to review. The problem is further compounded by the expert report, which provides little guidance on relevant issues. Instead of actually expressing an opinion about Marshall's likelihood to re-offend, the report simply lists the factors outlined in R.C. 2950.09(B)(2), and then comments (mostly factually) on each. For example, one factor listed in the report is "Presence of Multiple Victims." This correlates with R.C.2950.09(B)(2)(d), which lists as a factor "[w]hether the sexually oriented offense for which sentence is to be imposed involved multiple victims." Concerning this particular factor, the report says only that "[t]here were two victims in this case." We do not need to pay a forensic psychologist to tell us this.
Similarly, the report lists "Age of the Offender," which correlates with R.C. 2950.09(B)(2)(a) ("[t]he offender's age"). Regarding this factor, the report says, "Mr. Marshall is currently 39 years old. Research indicates that individuals have a progressively decreasing likelihood of future offenses as they age." On its surface, this comment appears to have meaning, but it is actually of little help.
Since Marshall was 26 at the time of the offense, we could interpret the psychologist's remarks to mean that Marshall is less likely to re-offend because he is now older. However, one could also infer that a 39 year old sex offender may be more likely to re-offend than an even older individual. In the absence of any contextual reference, we have no way of determining how likely re-offense is, comparatively speaking, at age 39. Further, without a relevant connection to this particular case and the characteristics and age of this particular defendant, the statement that an offender is "less likely to re-offend as he ages" is virtually meaningless. We must stress that we do not expect complete precision in an often imprecise field. Nonetheless, if opinions are no more helpful than this, very little is gained by retaining experts.
As an additional point, some information in the 2000 forensic report is incorrect. For example, the psychologist noted in the report that Marshall had not participated in any programming specifically designed for sex offenders. In contrast, the institutional report indicated that Marshall had completed extensive programming, including 632 hours of sex offender therapy.
Finally, to the extent that we can draw any conclusion from the 2000 forensic report, it would be that fewer factors weigh in favor of re-offense. This makes the trial judge's decision all the more problematic. As we mentioned earlier, the judge simply said that "[t]he Court upon review of all evidence designates you a sexual predator." Like the Eighth and First Districts, we find that the lack of any discussion is reversible error. Therefore, we must remand the case for further proceedings.
Previously, in State v. Weaver (July 13, 2001), Montgomery App. No. 18532, unreported, 2001 WL 787993, we expressed doubt about whether a trial court's failure to discuss the particular evidence and factors upon which it relies is reversible error. 2001 WL 787993, at p. 2. To the extent that Weaver conflicts with our decision today, the judges of this District have agreed that Weaver will have no further precedential effect. We now believe that Eppinger requires trial courts to create an adequate record for appellate review. We stress that this need not be done by written decision. Instead, trial courts may make findings on the record, following a hearing, so long as the findings comply with Eppinger.
Based on the preceding discussion, the sexual predator determination will be reversed and this case will be remanded for further hearing. We note that the trial judge who originally classified Marshall is no longer on the bench. Accordingly, the judge to whom the case is now assigned should take whatever evidence he feels is relevant for deciding Marshall's status. Further, because this case is being reversed and remanded for further hearing, the issues of sufficiency and weight of the evidence are premature and will not be considered. Accordingly, the first and second assignments of error are sustained in part and are also overruled in part, as premature.
 III
The third pro se assignment of error is based on the claim that the trial court committed plain error in labeling Marshall a sexual predator. The crux of this assignment of error is that R.C. 2950.09(B)(2) violates the separation of powers doctrine because it prescribes factors trial courts must consider in deciding if offenders are likely to engage in the future in one or more sexually-oriented offenses. As we mentioned earlier, the Ohio Supreme Court explicitly rejected this claim in Thompson, 92 Ohio St.3d 584, paragraph two of the syllabus. Consequently, we find no arguable merit in the third pro se assignment of error.
 IV
In the fourth pro se assignment of error, Marshall focuses on the fact that the sexual predator hearing process was initiated by a letter of recommendation from the ODRC. Since sexual predator hearings are civil in nature, Marshall feels the Ohio Rules of Civil Procedure should apply, and that complaints and a separate civil case number should be used to initiate the process. Marshall also points out certain defects in the screening instrument that is used to begin sexual predator proceedings.
In responding to this issue, the State contends that sexual predator determinations are special statutory proceedings to which the Civil Rules need not apply. However, the State also concedes that the Civil Rules generally apply even to statutory proceedings unless a good reason exists for deviating from the rules. According to the State, the good reason is that R.C. 2950.09(C)(1) sets out a specific statutory procedure to be followed in cases like the present. We agree with the State. Therefore, while Marshall's argument is not completely frivolous, this assignment of error has no merit.
Civ.R. 1(A) says that the Rules of Civil Procedure "prescribe the procedure to be followed in all courts of this state in the exercise of civil jurisdiction at law or in equity, with the exceptions stated in subdivision (C)." Under subdivision (C), the Rules of Civil Procedure,
 to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure (1) upon appeal to review any judgment, order or ruling, (2) in the appropriation of property, (3) in forcible entry and detainer, (4) in small claims matters under Chapter 1925, Revised Code, (5) in uniform reciprocal support actions, (6) in the commitment of the mentally ill, (7) in all other special statutory proceedings; provided, that where any statute provides for procedure by a general or specific reference to the statutes governing procedure in civil actions such procedure shall be in accordance with these rules.
We have previously held that sexual offender classifications are civil in nature and that the Rules of Civil Procedure apply. State v. Leonard (Apr. 20, 2001), Montgomery App. No. 18422, unreported, 2001 WL 395348, p. 3. However, in Leonard, we considered only the application of Civ.R. 58(A) and did not detail the basis for our decision. The Eleventh District has also held that the Civil Rules apply to the sexual predator determination process, and that a timely request for separate findings of fact and conclusions of law is appropriate. State v. Barnes (Dec. 22, 2000), Trumbull App. No. 99-T-0068, unreported, 2000 WL 1876741, p. 3. However, the focus in these cases has been on the distinction between civil and criminal cases. Since the Ohio Supreme Court has said that sexual predator hearings are civil, as opposed to criminal, proceedings, courts have, therefore, found that the Rules of Civil Procedure apply. Id.
The above cases did not consider whether R.C. 2509.09(C)(1) is a special statutory proceeding for purposes of Civ.R. 3, which requires civil proceedings to be initiated by the filing of a complaint. In this regard, we think that R.C. 2509.09(C)(1) is a "special statutory proceeding" because the legislature has provided explicit statutory procedures for classifying offenders who were convicted before January 1, 1997, and who were still imprisoned after that date. However, this does not mean that the Civil Rules are inapplicable. Even if sexual predator hearings are considered special statutory proceedings, the Civil Rules will still apply unless a good reason exists for deviating from the rules. Civ.R. 1(C). See also, Staff Notes to Civ.R. 1. As a result, there is no conflict between the present case and our holding in Leonard.
Although good reasons may require the application of various Civil Rules to sexual predator hearings, we see no reason to apply Civ.R. 3 to the initiation of the R.C. 2509.09(C)(1) process. First of all, filing separate civil actions is impractical, since existing criminal cases already contain many records needed for assessing an offender's status. The only thing separate actions would accomplish is unnecessary duplication of records.
Second, a civil complaint and the House Bill 180 screening form both serve a similar function. In this regard, R.C. 2950.09(C)(1) says that if an offender committed a sexual offense before January 1, 1997, and is still imprisoned after that date, ODRC must decide whether to recommend the offender's classification as a sexual predator. If ODRC decides that the offender should be designated a sexual predator, it must send the recommendation to the court that sentenced the offender. This process is quite similar to filing a civil complaint with a court. Both the complaint and the screening form contain certain "allegations" that give an opposing party notice of relevant issues. And, as with civil cases, a sex offender must be given appropriate notice of the date, time, and place of any classification hearing. R.C. 2950.09(C)(2)(b).
Significantly, a trial court is not bound by the ODRC recommendation, anymore than it is bound by the allegations in a civil complaint. Instead, the court makes an independent decision about whether an offender should be classified as a sexual predator. See R.C.2950.09(C)(2)(a). In fact, the court cannot decide that an offender is a sexual predator without a hearing. Id. See, also, State ex rel. Mason v. Griffin (2000), 90 Ohio St.3d 299, 303. Therefore, we see no purpose in substituting a civil complaint for the ODRC screening form.
Accordingly, Marshall's fourth pro se assignment of error is without merit and is overruled.
Based on the above discussion, the two assignments of error in the Anders brief are overruled, and the third and fourth pro se assignments of error are also overruled. The first and second pro se assignments of error are sustained in part, because the trial court failed to comply with State v. Eppinger. However, the first and second pro se assignments of error are also premature, in part, insofar as they raise the sufficiency and weight of the evidence sustaining the sexual predator determination. Consequently, the sexual predator classification is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.
WOLFF, P.J.,, and YOUNG, J., concur.