17 A.3d 843 (2011)
419 N.J. Super. 527
STATE of New Jersey, Plaintiff-Respondent,
v.
James E. BARLOW, Defendant-Appellant.
No. A-2593-09T3.
Superior Court of New Jersey, Appellate Division.
Submitted February 15, 2011.
Decided May 6, 2011.
*844 Yvonne Smith Segars, Public Defender, attorney for appellant (Susan Brody, Assistant Deputy Public Defender, of counsel).
Joseph L. Bocchini, Jr., Mercer County Prosecutor, attorney for respondent (Dorothy Hersh, Assistant Prosecutor, of counsel and on the brief).
Before Judges WEFING, PAYNE and KOBLITZ.
The opinion of the court was delivered by
PAYNE, J.A.D.
Defendant, James E. Barlow, appeals from the denial of his request to retract his guilty plea and proceed to trial. On appeal, he raises the following arguments:
POINT I
BECAUSE DEFENDANT RAISED A COLORABLE CLAIM OF INNOCENCE, THE COURT ERRED IN REFUSING TO PERMIT HIM TO RETRACT HIS GUILTY PLEA AND PROCEED TO TRIAL.
POINT II
TRIAL COUNSEL'S ACTIONS UNDERMINING DEFENDANT'S ATTEMPT TO RETRACT HIS PLEA DEPRIVED HIM OF THE EFFECTIVE ASSISTANCE OF COUNSEL.
Because we find that counsel was ineffective in her representation of defendant thereby depriving him of his constitutional right to counsel at a crucial stage of the criminal proceedings against him, we reverse.

I.
This matter arises out of an incident, occurring at 12:28 a.m. on July 8, 2007 in Trenton, during which three people were robbed at gunpoint by two black males wearing black hooded sweatshirts, who then fled on foot. According to defendant's pre-sentence investigation report, the police were summoned, and at 12:35 a.m., while driving in an unmarked car, they observed two black males, later identified as Robert McIntosh and James Barlow, crossing the street. McIntosh was wearing a black T-shirt and carrying a black back pack. The police shined a flashlight on McIntosh, who was observed to be visibly startled by the officers' presence. While illuminated by the flashlight, McIntosh was also seen to take a silver handgun from his waist area and place it in the backpack, dropping the backpack to the ground. The police thereupon exited their vehicle and patted down McIntosh and Barlow, recovering jewelry from the pockets of both men. A gun and a black/camouflage-colored hooded sweatshirt was found in the backpack that McIntosh had been carrying. Search of a backpack worn by Barlow revealed two BB guns and a black hooded sweatshirt. The three victims identified McIntosh and Barlow *845 as the people who had committed the robbery.
Both men were charged in a multi-count indictment with three counts each of first-degree robbery, N.J.S.A. 2C:15-1, third-degree theft by unlawful taking, N.J.S.A. 2C:20-3a, fourth-degree aggravated assault with a firearm (pointing), N.J.S.A. 2C:12-1b(4), third-degree utterance of terroristic threats, N.J.S.A. 2C:12-3a, and second-degree tampering with a witness, N.J.S.A. 2C:28-5a. They were also charged with second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a, third-degree unlawful possession of weapons, N.J.S.A. 2C:39-5b, third-degree receipt of stolen property (a gun), N.J.S.A. 2C:20-7a, and fourth-degree possession of an imitation firearm for an unlawful purpose, N.J.S.A. 2C:39-4e. McIntosh was charged as a person not permitted to possess weapons, N.J.S.A. 2C:39-7b, a second-degree crime. Accomplice liability pursuant to N.J.S.A. 2C:2-6 was charged in connection with each count.
On May 13, 2009, McIntosh pled guilty pursuant to a plea agreement and implicated defendant. One day later, on May 14, plea negotiations with defendant occurred. At defendant's request, during the morning, defendant met with the prosecutor, in the presence of his own counsel, who explained accomplice liability to him. The prosecutor also informed defendant that, because defendant was charged with three armed robberies and was extended-term eligible, he faced a sentence of up to life in prison. At that point, defendant determined to plead guilty, but when counsel went to the holding cell to complete the plea paperwork, defendant again maintained his innocence.
After lunch, defendant was brought before the trial judge, who informed defendant of the information inculpating him that had been provided by McIntosh on the previous day. Nonetheless, defendant maintained that he was "just walking the street when the crime was already in commission." Although he said he was willing to take the plea, he maintained his innocence. After further discussion, however, defendant agreed to provide a factual basis for a plea to first-degree robbery, to be sentenced as a second-degree crime to ten years in custody, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. A factual basis for the plea was thereupon given and accepted by the court and the prosecutor. Sentencing was scheduled for July 15, 2009.
One week after the plea hearing, defendant sent a letter to defense counsel stating that he wished to retract his plea. However, no motion was filed on his behalf. Defendant also wrote to the trial judge to request that his plea be vacated. However, at the hearing on his application, which the judge determined to treat as a motion, defense counsel did not support defendant's position. Instead, she stated in court:
As the court is aware, Mr. Barlow sent me a letter informing me that he wished to retract his plea of guilty pursuant to Rule 3:9-3(e). After reading the basis on which he wants to withdraw the plea, I contacted the alleged victim, victimswell, I spoke to one of them, the one whose house all three victims were standing before. And he, Mr. Barlow, in one of his, one of his concerns was that, or is that not one of the victims ever stated that the defendant, meaning him, had ever took anything from them, nor did they ever state that the defendant ever placed them in fear of their life or liberty. Let me just see if I've got his name.
. . .
I spoke to Rafael Torres, and Mr. Torres informed me that he saw the *846 person that he identified later that night to the police. He saw the taller gentleman holding a gun at his friend's, the back of his friend's head. And I asked how could you have seen his face, and he said the angle from which he was standing he could see.
So as not to make myself a witness in the case, I asked my investigator to reach out for all three alleged victims. While he was not able to reach one of them, he spoke with Mr. Burgos and Mr. Torres. And the representation is that all three discussed this case on several occasions, and they all agree the defendant is the person responsible for the crime and that they would not assist us any further on his behalf. That is the request I got back.
Thereafter, according to counsel, she responded to defendant and instructed him that he would have to file his own motion and to provide the court with the basis for retracting his plea. Counsel then informed the judge that defendant wished to address him on the issue presented.
Defendant, in turn, argued that the pre-trial discovery provided by the State did not inculpate him, and that the substance of the statements given by the victims to his counsel were not contained in that initial discovery. He stated: "The statements was that I was just standing there. That's the statements that's in my indictment packet, not that I put a gun to nobody's head or anything. The statements in the indictment package was that my codefendant, . . . that he placed the gun to an individual's head, not I." Further, defendant maintained that he had always asserted his innocence. "Over four times I stated no. You sent us out, brought us back over lunch. I still stated no. And I told [the prosecutor] at the time she had the sidebar that I never committed the crime." According to defendant, he only gave a factual basis for the plea because the judge "backed [him] in a corner" and because he was unwilling to spend his life in prison.
The judge declined to accept defendant's arguments, finding that defendant had failed to present a "serious claim of innocence." Further, relying on the letter that defendant had written to his counsel, which somehow had come into the judge's possession,[1] the judge found that defendant's intent was not to withdraw his plea, but merely to renegotiate it so as to obtain a lesser prison term. Accordingly, the judge denied defendant's motion and proceeded to sentence him in conformity with the plea agreement. This appeal followed.

II.
We first address defendant's second point that he received ineffective assistance of counsel in his attempt to withdraw his plea determining, in contrast to the observation in State v. Preciose, 129 N.J. 451, 460, 609 A.2d 1280 (1992) that ineffective assistance of counsel arguments frequently depend on evidence outside the record and thus cannot be raised on direct appeal, that here the issue can be decided on the basis of defendant's plea and sentencing transcripts. We perceive two issues to exist in this regard: (1) was counsel ineffective in failing to move on defendant's behalf to retract his plea following his request that she do so, and (2) was counsel ineffective as the result *847 of her communications to the judge undercutting the merits of defendant's pro se arguments.
The issue of defendant's right to counsel in connection with a plea withdrawal motion was recently discussed by the Supreme Court in a somewhat different context in State v. Hayes, 205 N.J. 522, 16 A.3d 1028 (2011). In that case, Hayes pled guilty to charges of robbery and eluding, but then determined to withdraw his plea. Because retained counsel took the position that he had a conflict of interest in seeking withdrawal, two additional attorneys were contacted, the first of whom also had a conflict but the second of whom agreed to represent the defendant, but was unable to do so on the day scheduled for sentencing. Id. at 530-31, 16 A.3d 1028. The defendant's request to withdraw his plea was first raised before the trial judge at the sentencing hearing, at which time the defendant sought a short adjournment to obtain the arranged-for representation. Id. at 530, 16 A.3d 1028. Instead, the trial judge considered the defendant's pro se arguments in support of his application to rescind his plea, id. at 531-33, 16 A.3d 1028, and concluded that those arguments constituted nothing more than "the pleader's form of buyer's remorse." Id. at 532, 16 A.3d 1028. Relief was denied, and the defendant was sentenced in accordance with the plea agreement. Id. at 533, 16 A.3d 1028.
On appeal, we affirmed in an unpublished opinion. State v. Hayes, No. A-0845-08T4, 2010 WL 27898 (App.Div. January 7, 2010). However, the Supreme Court reversed, determining that the trial court had misused its discretion in declining to grant a short adjournment to permit the appearance of newly retained counsel. Id. at 539-40, 16 A.3d 1028.
Of particular significance to the present case was the Court's reliance on the constitutional guarantee of assistance of counsel in determining that an adjournment should have been granted to permit counsel to present the defendant's plea withdrawal motion. In that regard, the Court observed:
Over thirty years ago, this Court acknowledged that "[w]ithout the guiding hand of counsel, an innocent defendant may lose his freedom because he does not know how to establish his innocence[,]" and that "[t]rained counsel is also necessary to vindicate fundamental rights that receive protection from rules of procedure and exclusionary principles." State v. Sugar, 84 N.J. 1, 16 [417 A.2d 474] (1980) (citations omitted). In sum, "[t]he right to be heard [in court] would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." Powell v. Alabama, 287 U.S. 45, 68-69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170 (1932).
The governing principle is simple and deeply ingrained in the fabric of our jurisprudence: "Because the assistance of counsel is essential to insuring fairness and due process in criminal prosecutions, a convicted defendant may not be imprisoned unless counsel was available to him at every critical point following the initiation of adversary judicial criminal proceedings[.]" Sugar, supra, 84 N.J. at 16 [417 A.2d 474] (citations and internal quotation marks omitted); see also State v. A.O., 198 N.J. 69, 82 [965 A.2d 152] (2009) (holding that "[o]nce adversary judicial proceedings have begun, the right [to counsel] applies not only at trial, but to any critical stage of the prosecution, that is, any stage in which the substantial rights of the accused may be affected" (citation and internal quotation marks omitted)).

*848 [Hayes, supra, 205 N.J. at 535-36, 16 A.3d 1028.]
In determining that, notwithstanding the clarity of the plea hearing and the fact that the withdrawal request was not made until the day of sentencing, the judge misused his discretion in denying the defendant's adjournment request, the Court noted that, upon retained counsel's determination that he could not represent the defendant in connection with his motion, "defendant effectively was without representation, a status anathema to the fundamental constitutional notions of fairness that must guide criminal proceedings." Id. at 540, 16 A.3d 1028. In the circumstances presented, the Court observed, "the effect of going forward on defendant's withdrawal motion equaled requiring that defendant proceed without counsel. In the context of a criminal proceeding, where liberty is at stake, that result cannot be countenanced, and constitutes `judicial action . . . clearly unreasonable in the light of the accompanying and surrounding circumstances,' and resulted in a `ruling . . . prejudicial[] to the rights of the party complaining.'" Id. at 540, 16 A.3d 1028 (quoting Smith v. Smith, 17 N.J.Super. 128, 133, 85 A.2d 523 (App.Div.1951), certif. denied, 9 N.J. 178, 87 A.2d 387 (1952)).
Hayes provides strong support for the conclusion that defendant in the present matter was deprived of his constitutional right to counsel when his attorney declined to pursue a motion on his behalf to withdraw his guilty plea. In that regard, we also note that R.P.C. 1.2(a) requires, in a criminal case, that defense counsel "shall consult with the client and, following consultation, shall abide by the client's decision on the plea to be entered, jury trial and whether the client will testify." We find implicit in that rule of professional conduct the requirement that counsel abide by a client's determination, after a plea of guilty has been entered, to seek its withdrawal. See also Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987, 993 (1983) (investing ultimate authority in the defendant to determine whether to plead guilty). The ABA Standards for Criminal Justice: Prosecution and Defense Function, Std. 4-1.2(b) (3d ed. 1993) provide: "The basic duty defense counsel owes to the administration of justice and as an officer of the court is to serve as the accused's counselor and advocate with courage and devotion and to render effective, quality representation." We are satisfied that counsel's conduct did not meet these standards in the present case.
We further find that defendant was deprived of effective assistance of counsel as the result of counsel's undermining of defendant's assertions of innocence in connection with his application to withdraw his plea. In this respect, the case resembles the facts of State v. Rue, 175 N.J. 1, 811 A.2d 425 (2002), a case in which defense counsel commenced an argument in support of a petition for post-conviction relief (PCR) by stating: "As I put in my brief, I don't think Mr. Rue has a meritorious claim on his PCR. I think though it's still incumbent upon me to claim what his argument is." Id. at 10, 811 A.2d 425. In determining that such an argument was improper, the Court construed Rule 3:22-6, governing post-conviction relief (PCR), to prevail over R.P.C. 3.1, which generally bars counsel from advancing frivolous arguments, and to require PCR counsel to communicate with the client, investigate the matter, id. at 18, 811 A.2d 425, and "advance any claims the client desires to forward in a petition and brief and make *849 the best available arguments in support of them." Id. at 19, 811 A.2d 425. Further, counsel was directed not to denigrate the defendant's position. Ibid. In evaluating the record before it, which in many respects resembled the record in the present matter, the Court stated:
Because Rue's counsel abandoned any notion of partisan representation by countering every one of his claims and characterizing the entire petition as meritless, Rue did not receive the representation guaranteed by our PCR Rule.
[Id. at 19, 811 A.2d 425.]
Recognizing that the defendant's arguments had not been considered, the Court affirmed our order remanding the case for the assignment of counsel as if on a first PCR petition, and for an new PCR hearing before a new judge. Ibid.
Although the Court's decision in Rue turned on its interpretation of Rule 3:22-6(d), we find its holding with respect to the inadequacy of counsel's presentation of the defendant's petition to be equally applicable in the present case. As Justice Brennan has observed: "To satisfy the Constitution, counsel must function as an advocate for the defendant, as opposed to a friend of the court." Jones, supra, 463 U.S. at 758, 103 S.Ct. at 3316, 77 L.Ed.2d at 997 (Brennan, J. dissenting) (citing Anders v. California, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493, 498 (1967) and Entsminger v. Iowa, 386 U.S. 748, 751, 87 S.Ct. 1402, 1403, 18 L.Ed.2d 501, 504 (1967)).
As a consequence of the foregoing analysis, we conclude that defendant was deprived of the effective assistance of counsel under standards set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984) and United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657, 667-68 (1984), and adopted in New Jersey in State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987).
On appeal, the State argues that even if counsel's representation was ineffective, defendant did not suffer any prejudice as a result because his application lacked merit. The same argument was raised in Hayes, and was rejected by the Court, which stated:
The record on appeal discloses no meaningful analysis of the denial of defendant's withdrawal motion; the only references to that denial are the trial court's conclusions that, at the time the guilty pleas were accepted, defendant was found competent to enter a plea, that defendant then understood his rights, that there was a factual basis for the pleas, and that defendant entered into a negotiated plea. Solely based on those statements, the trial court concluded that "I have yet to hear, other than a change of mind, the pleader's form of buyer's remorse" anything to support the withdrawal motion, and that "there are legal standards for that[.]" On that basis the trial court denied defendant's plea withdrawal motion.
[Hayes, supra, 205 N.J. at 540-41, 16 A.3d 1028.]
Similarly, in the present case the trial judge placed great reliance on his searching inquiry at the time that the plea was entered, and upon defendant's unequivocal responses. But here, the judge's determination was also undoubtedly colored by defense counsel's statements completely undercutting defendant's claims of innocence and was explicitly colored by defendant's statement in his letter to counsel *850 regarding his potential willingness to accept a lower plea. Under these circumstances, as in Hayes, we cannot determine whether defendant's plea withdrawal application, if properly presented, would have satisfied the standards for plea withdrawal set forth in State v. Slater, 198 N.J. 145, 966 A.2d 461 (2009),[2] a decision issued shortly before defendant's plea withdrawal application was heard and sentencing took place in the present matter.
Accordingly, as in Hayes and Rue, we remand this matter with instructions that new counsel be assigned to defendant and that the matter be assigned to a different judge, who is directed to consider anew and under pre-sentence standards, Slater, supra, 198 N.J. at 158, 966 A.2d 461, whether, in the interest of justice, defendant should be permitted to withdraw his plea of guilty to one count of first-degree robbery and proceed to trial on the indictment against him.
Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.
NOTES
[1] Because we do not know the circumstances under which the judge obtained defendant's letter to counsel, and because defendant did not claim a violation of the attorney-client privilege on appeal, we will not address any issues arising out of the judge's possession of this letter in this opinion.
[2] Slater provides that

trial judges are to consider and balance four factors in evaluating motions to withdraw a guilty plea: (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.
[Id. at 157-58, 966 A.2d 461 (citation omitted).]